**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

| | |
|---|---|
| *Seattle Office:* | *Tacoma Office:* |
| *700 Stewart Street, Ste 5220* | *1201 Pacific Ave., Ste 700* |
| *Seattle WA, 98101-1271* | *Tacoma, WA 98402-4305* |
| *Tel: (206) 553-7970* | *Tel: (253) 428-3800* |
| *Fax: (206) 553-0582* | *Fax: (253) 428-3826* |
| *www.usdoj.gov/usao/waw* | |

May 18, 2021

The Honorable Ramon E. Reyes
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Abidemi Rufai a/k/a Sandy Tang
               Criminal Docket No. 21-MJ-00598 (JRC)

Dear Judge Reyes:

      The government respectfully submits this letter in advance of the defendant's detention hearing and in response to defendant's request to be released in the above-captioned case.

      The defendant, Abidemi Rufai, is a Nigerian national and state government appointee. He has been charged with five counts of wire fraud for his participation in the massive COVID-19-related fraud on the Washington Employment Security Department (ESD), the state agency responsible for administering federal and state unemployment benefits to Washington residents.

      Rufai presents an extreme risk of flight. He was arrested while attempting to leave the country to return to Nigeria. He has strong ties to Nigeria, and no ties at all (apart from this fraud) to the Western District of Washington. He possesses economic resources and technical abilities that could facilitate his flight from prosecution. And, if he does escape to Nigeria, extradition will be extraordinarily difficult or impossible because of his ties to the Nigerian government. The Court should order Rufai detained because no conditions or combination of conditions will reasonably assure his appearance as required.

# I. Background

On May 14, 2021, the Honorable David W. Christel, United States Magistrate Judge for the Western District of Washington, authorized an Amended Complaint charging the defendant with five counts of wire fraud. As described in the Amended Complaint, in April and May 2020, criminals used the stolen identifying information of Washington residents to submit hundreds of millions of dollars of fraudulent "imposter" claims to the ESD. The Amended Complaint alleges that Rufai personally submitted over 100 claims using a single email account. The Amended Complaint also contains evidence that, since at least 2017, Rufai has participated in a variety of fraud schemes, including the submission of fraudulent FEMA disaster relief claims and fraudulent submissions to the IRS.

At about 7:45 pm on May 14, 2021, federal law enforcement officers arrested Rufai at John F. Kennedy International Airport, as he prepared to fly first-class to Nigeria, where he resides with his with wife and children. Rufai had entered the United States on March 19, 2021, on a B2 tourism visa, and he stayed with his brother in Jamaica, New York. This is the same address that the Amended Complaint alleges Rufai used in 2020 to receive packages containing fraud proceeds. Rufai consented to an interview with law enforcement, in which he denied any participation in the fraud.

# II. Legal Standard

A defendant may be detained pending trial when the case involves a serious risk that the defendant will flee. 18 U.S.C. § 3142(f)(2)(A). The Court "shall" order the detention of a person before trial if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of establishing by a preponderance of evidence that the defendant is a flight risk. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Aitken, 898 F.2d 104, 107 (9th Cir. 1990).

The factors relevant for consideration are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

# III. Argument

### A. Defendant Poses an Extraordinary Risk of Flight.

Rufai is a Nigerian national. He was arrested at the airport as he prepared to board a flight to his country of citizenship, even *before* he was aware of the multiple federal

felony charges he faces in the United States. His incentive to leave the country now has grown exponentially, and each of the relevant factors weighs in favor of detention.

*First*, Rufai's history and characteristics weigh heavily in favor of detention, particularly his extensive ties to his home country of Nigeria. In a post-arrest interview with federal law enforcement officers, Rufai acknowledged he holds a government position in Nigeria. This corroborates open source research that Rufai is the Senior Special Assistant to the Governor of Okun, a Nigerian state.[1] Moreover, according to his statements to U.S. Probation and Pretrial Services (Pretrial Services), the defendant has a wife, two children, 15 siblings, and parents—all of whom reside in Nigeria except one brother. The defendant informed Pretrial Services that he is employed as a realtor in Nigeria. Based on open source research, the defendant has multiple business ventures in Nigeria.

*Second,* by contrast, Rufai has *no* known contacts to the Western District of Washington—apart from using the stolen identities of its residents to rob the state's coffers. His only known connection with the United States is his brother (one of 15 siblings) who resides in New York.

*Third,* Rufai has substantial financial resources that will enable his flight. Rufai made the dubious representation to Pretrial Services that his total assets consist of $6,000 in the United States and $10,000 in a Nigerian bank account. At the time of his arrest, the defendant was preparing to board a first-class flight to Nigeria with five debit cards and two credit cards in his wallet, a luxury Cartier watch, seven pieces of luggage, and three smartphones on his person. While the government does not have access to his Nigerian financial information at this time, the Amended Complaint sets forth evidence that, during the period of the fraud, a single U.S. bank account in Rufai's name received $288,825 in deposits. Even this partial financial picture makes clear that Rufai has significant financial assets sufficient to facilitate his flight.

*Fourth,* if Rufai succeeds in fleeing the country, he likely will be gone forever. It is well known that extradition from Nigeria to the United States is difficult under the best of circumstances. That will be exacerbated in this case because of the strong political connections that earned Rufai a governmental appointment.

*Fifth*, the nature of the offenses charged and the weight of evidence against Rufai also weigh in favor of detention. Rufai is accused of being a significant participant in what may have been the largest fraud ever against the Washington state government. Further, because the fraud relates to a presidentially-declared national emergency and a presidentially-declared major disaster for the State of Washington, each of the five counts

---

[1] Nigerian press reports from earlier today state that Rufai's position has been suspended. This does not diminish the fact that Rufai has significant political connections that would undoubtedly complicate extradition. https://www.pmnewsnigeria.com/2021/05/18/abiodun-suspends-aide-abidemi-rufai-over-350k-fraud/

carries a maximum sentence of 30 years imprisonment, a statutory sentencing enhancement of 10 years. See 18 U.S.C. § 1343. The augmented maximum sentence reflects Congress's recognition that fraud committed during a period of national or state crisis are particularly severe offenses. The charged wire transmissions occurred in late April and early May 2020, after the State of Washington had lost over half a million jobs in the month of April, tripling the state unemployment rate from just the month prior.[2] Rufai's fraud was a deliberate attempt to exploit this tragedy for his own gain. Worse, the flood of fraudulent filed claims during this period caused ESD to delay payments to legitimate claimants during a time of extreme financial stress for many American workers. And the evidence that Rufai committed for these crimes, as detailed in the Amended Complaint, is strong: Rufai's phone number was used to verify the email account used to commit the fraud; photographs of Rufai are contained within the account; and fraud proceeds were delivered to the residence of Rufai's brother, where Rufai was staying at the time.

*Finally*, Rufai poses a significant economic danger to the community. See United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) ("[w]e further hold that danger may, at least in some cases, encompass pecuniary or economic harm"); see also United States v. Otunyo, 2020 WL 2065041, *6 (D.D.C. Apr. 28, 2020) (finding defendant charged with bank fraud and aggravated identity theft posed a danger to the community).

The evidence developed in this investigation and summarized in the Amended Complaint shows that Rufai is a prolific fraudster whose schemes have been ongoing for years. It is noteworthy that Rufai's brother, when interviewed by Pretrial Services, was unwilling or unable to provide any information about Rufai's business activities in Nigeria. Rufai is highly knowledgeable about obtaining and using large volumes of stolen personal identifiable information and tax and other financial documents. He is also a sophisticated user of payment systems and financial institutions to obfuscate financial transactions. Since at least 2017, Rufai has used these skills and knowledge to file disaster relief claims to the Federal Emergency Management Agency (FEMA) and perpetrate schemes involving U.S. tax and business fraud. Accordingly, Rufai would pose a serious economic danger to the community if released.

> B. No Conditions Will Reasonably Assure the Defendant Will Not Flee the Country and Not Cause Danger to the Community.

The cash bond and surrender of travel documents proposed by Pretrial Services are wholly inadequate to reasonably assure defendant's appearance. As detailed above, Rufai has substantial financial resources; forfeiting a bond, given the length of imprisonment

---

[2] https://www.esd.wa.gov/newsroom/april-2020-monthly-employment-report-payroll-employment-plummets-unemployment-rate-soars.

the defendant faces and the defendant's significant ties to Nigeria, would not be sufficiently consequential to deter flight.

The surrender of travel documents is also inadequate. Rufai could use his resources to purchase a fraudulent passport, or even slip over the border without one. Further, the investigation has developed evidence that Rufai is well-acquainted with sophisticated manufacturing and use of fake identification documents and procuring these documents with cryptocurrency such as bitcoin. For example, on October 18, 2018, Rufai emailed support@secondeyesolution.com and inquired, "what i mean is that can you do a master card which i will provide the details and u send me the picture front and back just like you do for drivers license." Rufai's email account also contains dozens of order confirmations from the same email address, showing payments in bitcoin.

Given the extensive fraud, Rufai has been able to perpetrate primarily with a computer and an internet connection, there are no conditions that can reasonably assure the Court that he will not cause economic danger to the community if he is released.

### IV.   Conclusion

For all the foregoing reasons, the government respectfully requests that the Court deny Rufai's request for release and enter an order of detention pending trial.

    Respectfully submitted,

    TESSA M. GORMAN
    Acting United States Attorney

By: *Cindy Chang*
    *Seth Wilkinson*
    Assistant United States Attorneys

5